**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 280-4783
jkaliel@kalielpllc.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL WALSH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC., d/b/a SENSIBLE PORTIONS,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Michael Walsh ("Plaintiff"), on behalf of himself and all other similarly situated, complains and alleges based upon, among other things, his investigation made by and through his attorneys as follows. The Central District of California has jurisdiction to hear this matter pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of

the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed classes is a citizen of a different state than Defendant The Hain Celestial Group, Inc. d/b/a Sensible Portions ("Sensible Portions" or "Defendant"). This Court also has personal jurisdiction over Defendant because it purposefully directed its activities in this District, committed the wrongful acts alleged herein in California, and has extensive contacts with this forum.

## NATURE OF THE ACTION

1. Defendant The Hain Celestial Group, Inc. d/b/a Sensible Portions ("Sensible Portions" or "Defendant") manufactures, labels, advertises, markets, and sells its Garden Veggie Straws Made with Avocado Oil Sea Salt (the "Product") online and at supermarkets throughout the country. Plaintiff's instant putative class action complaint alleges that Sensible Portions falsely and deceptively misrepresents to consumers that its Product is "MADE WITH AVOCADO OIL," which is unequivocally and verifiably untrue, and instead, contains undisclosed seed oils that are not identified on its Product label.

2. Defendant prominently represents, front and center of its Product packaging, that the Product is "MADE WITH AVOCADO OIL" and doubles down on this affirmative misrepresentation on the back of the Product packaging, wherein the ingredients list confirms that "avocado oil" is supposedly the only oil content in the Product.

3. Defendant's strategy to create a Product line proudly bearing "MADE WITH AVOCADO OIL" label for sale in the health food marketplace is not accidental. The recent desire for consumers to seek out avocado oil- and olive oil-containing cooking oils in lieu of the wide array of cheap seed oils is due to the rising awareness of the negative health effects associated with consuming seed oils, which include fueling chronic inflammation that leads to the onset of a host of diseases. Accordingly, consumers, when presented with a choice, elect to pay a premium for products containing avocado oil instead—a healthier whole-food alternative to highly refined seed oils given its richness in antioxidants and healthy fats and stable performance in high-heat cooking.

4. However, Sensible Portions' advertising and marketing campaign is false,

deceptive, and misleading because, unbeknownst to Plaintiff and reasonable consumers, its Product is not made with authentic avocado oil, but instead, made with cheap, inflammatory seed oils—the very oils that consumers intentionally pay a premium to avoid.

5. Indeed, in July 2026, in the latest study in the series of findings on the authenticity of avocado oil, researchers at the University of California, Davis ("UC Davis") Department of Food Science and Technology published a peer-reviewed study in the journal *Applied Food Research* which found 89% of avocado oil-labeled chips, mayonnaises, and dressings were adulterated with cheaper, undisclosed seed oils.[1] Specifically, the UC Davis team tested two separate lots of Sensible Portion's Product for consistency and found that the Product had established compositional profiles—fatty acids and plant sterol markers—that were ***inconsistent with authentic avocado oil***. Instead, the study revealed that Defendant's Product contained the compositional profiles consistent with lower-cost refined oils, such as canola, corn, soybean, and/or sunflower oil.

6. In other words—at the very least—Sensible Portions' Product contained exponentially more seed oils than the sole avocado oil ingredient as represented by Defendant—and at most—the oil present in Sensible Portions' Product was fundamentally different on a DNA-level from authentic avocado oil such that it cannot be said to contain any authentic avocado oil at all.

7. Plaintiff and those similarly situated Class Members relied to their detriment on Defendant's misrepresentations and omissions that its Product was in fact "MADE WITH AVOCADO OIL" when deciding to purchase the Product. Plaintiff and Class Members would not have purchased the Product absent Defendant's misrepresentations and omissions regarding the composition of the Product. As a result of Defendant's

---

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last accessed, September 2, 2026) (hereinafter referred to as "the UC Davis Study").

deceptive conduct, Plaintiff and Class Members have suffered monetary damages as a result of Defendant's false and misleading advertising.

## PARTIES

8. Plaintiff Michael Walsh is a resident and citizen of Whittier, California.

9. Defendant The Hain Celestial Group, Inc., doing business as Sensible Portions, is a Delaware corporation with its headquarters in Hoboken, New Jersey.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed classes is a citizen of a different state than Sensible Portions.

11. This Court has personal jurisdiction over Sensible Portions because it purposefully directed its activities in this District, committed the wrongful acts alleged herein in California, regularly conducts business in this District, and has extensive contacts with this forum.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, and Sensible Portions regularly conducts business in this District.

## FACTUAL BACKGROUND AND COMMON GENERAL ALLEGATIONS

### I. Avocado Oil as a Healthy Alternative to Industrially Processed Seed Oils

13. Avocado oil, like olive oil, is widely renowned as a "premium" cooking oil used in processed snack food products, salad dressings, and mayonnaises. Health-conscious consumers gravitate towards avocado oil-containing products over industrial

seed oils for a variety of reasons,[2] including its production method of direct extraction from the fruit pulp; its nutrient dense composition rich in healthy monounsaturated fats and antioxidants; and its higher smoke point that makes it ideal for high-heat cooking without harmful oxidation.[3] Studies have found avocado oil helps regulate blood lipid levels by lowering LDL cholesterol and protecting HDL cholesterol, lowers blood pressure, reduces the risk of diabetes, and fights free radical damage to reduce oxidative stress and prevent chronic diseases.[4]

14. Seed oils, on the other hand, are far inferior. For example, seed oils are industrially-produced via mechanical pressing of the seeds or by solvent extraction, and then heavily refined often times with harsh bleaching and deodorizing chemicals.[5] These heavy industrial processes create oxidative stress in the body once consumed, produce toxins that damage cells, and fuel systemic inflammation.[6] What's more, seed oils contain high levels of linoleic acid, an omega-6 polyunsaturated fat ("PUFA"), which is most responsible for the proliferation of chronic diseases including heart disease, obesity,

---

[2] Why Avocado Oil Became a Seed Oil Alternative, Seed Oil Free Alliance, March 30, 2026, https://www.seedoilfreecertified.com/seed-oils-guide/oil-comparisons/why-avocado-oil-became-popular-as-a-seed-oil-alternative (last accessed September 2, 2026).

[3] Naturopathic Kitchen: Avocado Oil, Association of Accredited Naturopathic Medical Colleges, March 8, 2025, https://aanmc.org/naturopathic-kitchen/avocado-oil/ (last accessed September 2, 2026).

[4] Xinyue Lin & Zongjun Li, *Key components and multiple health functions of avocado oil: A review*, 122 Journal of Functional Foods 106494 (2024), https://doi.org/10.1016/j.jff.2024.106494 (last accessed September 2, 2026).

[5] How Are Seed Oils Made?, Seed Oil Free Alliance, May 9, 2025, https://www.seedoilfreecertified.com/seed-oils-guide/foundations/how-seed-oils-are-made (last accessed September 2, 2026).

[6] Dave Asprey, The Human Upgrade Podcast, *Seed Oils Are the Worst Foods in Your Diet with Dr. Cate Shanahan*, Episode 1168, available at https://ai.hubermanlab.com/clip?sids=chunk_1355695 (last accessed September 3, 2026).

Alzheimer's disease, and cancer.[7]

15. For these reasons, it is no surprise that consumers searching for healthier alternatives to seed oils consider products with avocado-oil containing representations to be material to their purchasing decisions.

16. The UC Davis Study observed that consumers pay a premium for avocado oil or olive oil labeled products in lieu of their seed oil counterparts, as the former "generally commanded higher retail prices than comparable products formulated with vegetable oils." For example, "[c]hips labeled with avocado oil ranged from $0.30-2.00 per ounce, compared with $0.43-1.70 for olive oil chips and $0.44-0.62 for vegetable oil chips."[8]

17. As lead author of the UC Davis Study, Professor Selina Wang observed: "Consumers are increasingly paying a premium for products made with avocado oil" and "[t]hey deserve to get what they pay for[.]"[9]

## II. <u>Sensible Portions' Advertising and Marketing of its Product</u>

18. Sensible Portions manufactures, labels, markets, advertises, and sells a variety of its self-described "better-for-you snacks"[10] online, as well as in major grocery retailers like Walmart, Target, Costco, and Whole Foods Market, including the specific Product at issue here: Garden Veggie Straws Made with Avocado Oil Sea Salt.

19. On the front and center of Defendant's Product Packaging—in bolded font

---

[7] Dr. Joseph Mercola & Christopher R. D'Adamo, Linoleic Acid: *A Narrative Review of the Effects of Increased Intake in the Standard American Diet and Associations with Chronic Disease*, Nutrients 2023, 15(14), 3129, https://doi.org/10.3390/nu15143129.

[8] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 at p. 4 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last accessed, September 2, 2026).

[9] UC Davis News & Information, That Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil, UC Davis, July 15, 2026, https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil (last accessed September 3, 2026).

[10] https://gardenveggiesnacks.com/pages/about-us (last accessed September 2, 2026).

within a bright green banner located next to a large image of an avocado—Sensible Portions prominently advertises its Products are "MADE WITH AVOCADO OIL." For example, screenshot of the front label of the Product is displayed below:




20. Doubling down on its unequivocal front-label representation that the Product is "MADE WITH AVOCADO OIL," Defendant lists "avocado oil" as the only oil ingredient for the Product on the back of the Product packaging. A screenshot of the ingredient list located on the back of the Product packaging is reproduced below:




21. At no point does Sensible Portions state that its Product contains any oil other than "avocado oil." Thus, Defendant's label representations and omissions mislead consumers like Plaintiff to believe that the Product contains avocado oil as its only oil

ingredient, and induce them to pay a premium for chips and snacks that, in reality, contain the very ingredients they specifically sought to avoid.

22. Throughout the liability period defined below, Defendant has engaged in an advertising campaign that falsely represents that its Product is "MADE WITH AVOCADO OIL" and thus, serves as a healthier snack option in lieu of similar products that openly contain seed oils.

23. As a result of this deception, Defendant sold numerous units of the Product online and in retail stores.

24. Plaintiff and Class Members have been, and will continue to be, deceived or misled by Defendant's deceptive advertising claims. Each Class Member purchased and consumed the Product during the liability period and in doing so, read and considered the advertising claims on the Product label and based their decision to purchase the Product on those advertising claims and material omissions. Sensible Portions' advertising claim that the Product was "MADE WITH AVOCADO OIL" was not only a material factor, but the only factor in influencing Plaintiff's decision to purchase and consume the Product.

25. Plaintiff and the Class Members would not have purchased the Product had they known it did not contain authentic avocado oil and instead contained undisclosed seed oils.

## III. Sensible Portions' Advertising Claims for the Products are Patently False and Deceptive as Confirmed By the July 2026 UC Davis Study

26. Despite this prominent marketing and advertising, Defendant's Product does not contain any authentic avocado oil at all, but instead, contains cheap and inferior seed oils.

27. The adulterated avocado oil epidemic is not a novel issue. Since at least 2020, researchers at the UC Davis Department of Food Science and Technology have championed the landmark study of oil adulteration in bottled avocado oil products. Those studies, first published in 2020 and then in in 2023 as a follow-up, have previously found

that at least 82% of commercial bottled avocado oils[11] and 70% of private label avocado oils[12] were either rancid or mixed with other undisclosed oils. Thus, Sensible Portions knows, or reasonably should have known, that its labeling of the Product was likely false and misleading to reasonable consumers.

28. Most recently, in July 2026, the UC Davis team, led by Professor Selina Wang, published a first of its kind, peer-reviewed study in *Applied Food Research*, that tested the authenticity of avocado oil as the sole declared edible oil ingredient used in commercially processed food products, and found 48 out of 54 avocado oil-labeled products, or 89%, were adulterated with cheaper seed oils.[13]

29. In the UC Davis Study, the team of scientific researchers analyzed 74 commercial chips, mayonnaise, and salad dressing products that bore labels containing avocado oil or olive oil from online retailers and California stores in 2025 and 2026.[14]

30. For each of the 37 distinct commercial products, two separate production lots were tested in duplicate to assess lot-to-lot variability.[15] Two separate lots of Sensible Portions' Garden Veggie Straws made with Avocado Oil Sea Salt Product, represented as Sample Nos. 29 & 30, were included in the Study.

31. Here's how the study worked: Researchers extracted the oils from these products, evaluated them using established fatty acid and plant sterol profiles—which are

---

[11] Hilary S. Green & Selina C. Wang, *First Report on quality and purity evaluations of avocado oil sold in the US*, 116 Applied Food Research 107328 (2020), https://doi.org/10.1016/j.foodcont.2020.107328 (last accessed, September 2, 2026).

[12] Hilary S. Green & Selina C. Wang, *Purity and quality of private labelled avocado oil*, 152 Applied Food Research 109837 (2023), https://doi.org/10.1016/j.foodcont.2023.109837 (last accessed September 2, 2026).

[13] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last accessed, September 2, 2026).

[14] *Id.* at 2.

[15] *Id.*

referred to as the chemical fingerprints or DNA-markers that uniquely verify oil identity—and assessed these compositional markers against ingredient-level authenticity.[16]

32. The Products' samples were compared against the referenced fatty acid and sterol profiles set forth in the *Codex Alimentarius* Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981), "which are intended to encompass expected natural variability" of fatty acid and sterol compositions in oil.[17]

33. To hedge against any "analytical uncertainty, biological variability, and potential processing influences," the Study allowed for deviations in the classification criteria. For example, samples with deviations limited to a single fatty acid or sterol marker not exceeding 10% of compositional limits were deemed "consistent" with authentic oil; samples with two fatty acid or sterol markers marginally exceeding the 10% allowance without deviations present across other markers were deemed "borderline"; and samples fully consistent with either fatty acids *or* sterols while borderline in the other were deemed "consistent." At bottom, only those samples with multiple deviations or patterns inconsistent with authentic reference profiles were ultimately classified as "inconsistent" with authentic oil.[18]

34. What's more, the Study also considered, and thoroughly tested, whether frying and emulsification processes would alter oil authenticity markers, and found these experiments showed only "minor shifts in authenticity markers, indicating that typical processing conditions do not explain the significant compositional deviations detected in the inconsistent products.[19]

35. Both fatty acid and plant sterol profiles independently revealed oil

---

[16] *Id.*
[17] *Id.* at 3.
[18] *Id.*
[19] *Id.* at 7-8.

adulteration. For instance, as to fatty acids, "[l]ow levels of palmitic acid (C16:0) and palmitoleic acid (C16:1), together with elevated stearic acid (C18:0), are not characteristic of authentic avocado oil. Rather, this pattern is more consistent with substitution or dilution using vegetable oils."[20] In addition, as to sterol composition, "[m]ost samples had campesterol, stigmasterol and Δ7-avenasterol levels outside the Codex standard ranges" and elevated ranges of these sterols "are consistent with substitution or dilution with vegetable oils."[21] At bottom, the "sterol deviations support the fatty acid findings and indicate widespread compositional inconsistency among the avocado oil-labeled products evaluated."[22]

36. At the end of the Study, both samples of Sensible Portions' Garden Veggie Straws Made with Avocado Oil Sea Salt Product were classified to be inconsistent with authentic avocado oil. Overall, the Study concluded that 48 of the 54 avocado oil-label products were classified as compositionally inconsistent with authentic avocado oil. Specifically, 93% of chip samples, 71% of mayonnaises, and 100% of salad dressings labeled as authentic avocado oil were adulterated with undisclosed seed oils.[23]

37. In contrast, only 1 of 20 olive oil-labeled products were found to be inconsistent with authentic compositional ranges.[24] "[T]his may also reflect the comparatively higher compliance and authenticity of olive oil sources relative to avocado oil, as olive oil standards are more established and regulatory oversight and enforcement are considerably more developed than for avocado oil."[25]

38. Plainly, the UC Davis Study illustrates the serious problem that Defendant's adulterated oil products create for consumers who reasonably rely on product labels in

[20] *Id.* at 4.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 3.
[24] *Id.*
[25] *Id.* at 4.

making their purchasing decisions:

> All products included in the study declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations. Thus, consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid source of the product.[26]

39. Jonathan Rubin, founder and CEO of the Seed Oil Free Alliance, a third-party certification and oil authenticity independent lab, agreed: "A front-of-package claim is a promise. It is not evidence by itself. Most companies we work with use avocado oil to meet a real consumer preference. The problem is when suppliers fail to test for seed oil adulteration, and the brand is still the one standing behind the claim."[27] "Consumers are right to be angry when a premium claim is not supported by the ingredients sourced. If a package says 100% avocado oil or made with avocado oil, consumers should not need a chemistry lab to know whether that statement is true."[28]

40. The economics of Defendant's deception is clear: "Pure avocado oil costs between $4 and $5 per pound" whereas "[s]eed oils, including sunflower, soybean, and corn oil, cost between $0.50 and $1.50 per pound. For a food manufacturer producing chips at scale, the incentive to cut avocado oil with cheaper seed oils is enormous. The label does not change. The margin does."[29]

41. As illustrated above, whether Defendant's Product was in fact "MADE WITH

---

[26] *Id.*

[27] New UC Davis Study Shows Why "Made With Avocado Oil" Claims Need Testing, Seed Oil Free Alliance, July 15, 2026, https://www.seedoilfreecertified.com/seed-oils-guide/oil-quality-and-fraud/uc-davis-2026-study-avocado-oil-adulteration (last accessed September 3, 2026).

[28] *Id.*

[29] Your "Avocado Oil" Chips Are Almost Certainly Made With Seed Oils. A UC Davis Study Just Proved It, Animal Base, August 10, 2026, https://animalbase.com/knowledge-base/news/your-avocado-oil-chips-are-almost-certainly-made-with-seed-oils-a-uc-davis-study-just-proved-it (last accessed September 3, 2026).

AVOCADO OIL" can be determined with objective factual evidence.

42. The advertising and marketing of Defendant's Product as containing avocado oil is in a prominent place—front and center, in bolded font within in a bright green banner, on the front label of the Products' packaging with the large image of an avocado—demonstrates Defendant's awareness that this claim about the Products' composition is material to consumers.

43. Defendant's deceptive representations and material omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.

44. Plaintiff and Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

45. In making the false, misleading, and deceptive misrepresentations and omissions described herein, Defendant knew and intended that consumers would purchase a Product advertised as containing avocado oil over comparable snacking chips that are not advertised as containing avocado oil only, and instead, as containing harmful seed oils.

46. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that the Class:

a. Paid a sum of money for a Product that was not what Defendant represented;

b. Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

c. Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

47. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have purchased the Product at all, or would have had paid substantially less for them.

48. Consequently, Plaintiff and Class Members have suffered an injury in fact and lost money or property as a result of Defendant's wrongful conduct.

## IV. Plaintiff's Experience

49. On or about August 14, 2026, Plaintiff purchased Defendant's Product from a Food 4 Less store located in Whittier, California.

50. Plaintiff read the Product packaging, specifically, Defendant's affirmative misrepresentation that the Product was "MADE WITH AVOCADO OIL" as well as the ingredient list on the back of the Product packaging that listed "avocado oil" as the only oil ingredient.

51. Plaintiff purchased the Product as a healthier alternative to snack chips that are made with seed oils, and reasonably believed he was receiving a snack food cooked in avocado oil only.

52. In making his purchasing decision, he reasonably relied on Defendant's misrepresentations that the Product contained avocado oil as its only oil ingredient, and would not have purchased Defendant's Product but for Defendant's misrepresentation that the Product was made with avocado oil only. Thus, Defendant's "MADE WITH AVOCADO OIL" misrepresentation was material to his decision to purchase the Product.

53. Had Plaintiff known that Defendant's Product was not "MADE WITH AVOCADO OIL" as advertised, and instead were made with inferior, cheap, and harmful seed oils, Plaintiff would not have purchased the Product at all, or would have paid substantially less for them.

54. Thus, Plaintiff suffered injury in fact and lost money as a direct result of Defendant's false and misleading advertising of its Product as described herein.

55. Although Plaintiff would like to purchase the Product in the future, should it genuinely be made with real avocado oil as it is currently misrepresented, he will be unable to do so because he is unable to rely on the truthfulness of the Product's "MADE WITH AVOCADO OIL" representation absent scientific testing.

## CLASS ACTION ALLEGATIONS

56. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself, and all other similarly situated persons. The proposed Classes are defined

as:

> **Nationwide Class**: All persons in the United States who, during the applicable statute of limitations, purchased the Product for their personal use, rather than for resale or distribution.
>
> **California Subclass**: All persons in California who, during the applicable statute of limitations, purchased the Product for their personal use, rather than for resale or distribution.

57. The Nationwide Class and the California Subclass are collectively referred to as the "Class" unless otherwise stated herein.

58. Excluded from the Class is Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

59. **Numerosity (Rule 23(a)(1)).** The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the identities of Class Members are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Class is also sufficiently ascertainable because Defendant has the administrative capability, through its computer systems and other business records, to identify all members of the proposed Class, and such contact information is otherwise not available to Plaintiff.

60. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class Members. Such common legal or factual questions include, but are not limited to:

a. Whether the Product was "MADE WITH AVOCADO OIL" as advertised;

b. Whether Defendant knew or should have known the Product contained no authentic avocado oil, and instead, contained oils other than avocado oil;

c. Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

d. Whether Defendant's advertising and marketing of the Product is misleading and deceptive;

e. Whether Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Product;

f. Whether Defendant's false and misleading statements concerning their Product was likely to deceive the public;

g. Whether Defendant represents to consumers that the Product has characteristics, uses, benefits, or qualities that the Product does not have;

h. Whether Defendant engaged in false advertising with respect to the Product;

i. Whether Defendant has been unjustly enriched;

j. Whether Plaintiff and the Class were harmed by Defendant's misrepresentations, and if so, the proper measure of damages;

k. Whether Plaintiff and the Class are entitled to injunctive, declaratory relief, or other equitable relief; and

l. Whether Plaintiff and the Class are entitled to reasonable attorneys' fees and costs.

61. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other Class Members because, *inter alia*, all Class Members have been deceived (or were likely to be deceived) by Defendant's false and misleading advertising claims about the composition of Defendant's Product. Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members.

62. **Adequacy of Representation (Rule 23(a)(4)).** Plaintiff is more than an adequate representative of the proposed Class in that he has suffered damages because of Defendant's improper business practices. Additionally:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiff and the unnamed Class Members;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

63. **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning Defendant's liability to all Class Members predominate over any questions affecting only individual Class Members. Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class Members' individual claims before the Court, especially where, as here, individual Class Members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

64. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

65. **Particular Issues (Rule 23(c)(4)).** Plaintiff satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

66. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

67. California's UCL prohibits, and provides civil remedies for, "unfair competition," including any "unlawful, unfair, or fraudulent act or practice." Cal. Bus. & Prof. Code § 17200, *et seq.* Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

68. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in an unfair business practice—but only that such practices occurred.

69. Plaintiff has standing to pursues this claim because Plaintiff has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased Defendant's Product for his own personal use. In doing so, Plaintiff relied on the false representation that the Product was "MADE WITH AVOCADO OIL" when in fact, did not actually contain authentic avocado oil, but instead contained undisclosed seed oils. Plaintiff expended money in the transaction that he otherwise would not have had he known Defendant's advertising claims were false.

***"Unfair" Prong***

70. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives against the gravity of the harm to the alleged victims.

71. Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant engaged in a false advertising campaign that mislead consumers into believing that they were receiving a product that contained avocado oil, along with the positive health benefits that are widely recognized with avocado oil, as opposed to cheaper and inferior seed oils that have well-known harmful health effects.

72. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. As a result of Defendant's false and deceptive labeling, consumers are misled into purchasing Defendant's Product over other avocado oil chips and snacks that truthfully disclose their oil composition.

73. Such practice is devoid of utility and outweighed by the gravity of the harm to Plaintiff and the California Class who lost money or property by paying for Defendant's Products. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

***"Fraudulent" Prong***

74. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

75. Defendant engaged in a fraudulent business practice by knowingly representing the Products as being "MADE WITH AVOCADO OIL." Defendant's practice deceived Plaintiff and are highly likely to deceive members of the consuming public who purchased the Product in reliance on their advertised composition.

76. Plaintiff and California Class Members acted reasonably when they relied on Defendant's misrepresentations concerning the Product.

77. Had Plaintiff and California Class Members known that Defendant's representations concerning its Product were false, they would not have purchased the Product at all or would have paid substantially less for them.

***"Unlawful" Prong***

78. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

79. Defendant's actions, as alleged herein, constitute illegal and unlawful practices committed in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA") and the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. (the "FAL").

80. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and California Class members have suffered damages.

81. Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and California Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

82. Additionally, Plaintiff and California Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## <u>SECOND CAUSE OF ACTION</u>
## False and Misleading Advertising
## Bus. & Prof. Code §§ 17500, *et seq*.
## (On Behalf of Plaintiffs and the California Subclass)

83. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

84. Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased Defendant's Product for his own personal use. In doing so, Plaintiff relied on the false representation that the Product was "MADE WITH AVOCADO OIL" when in fact, did not actually contain authentic avocado oil, but instead contained undisclosed seed oils. Plaintiff expended money in the transaction

that he otherwise would not have had he known Defendant's advertising claims were false.

85. California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known to be untrue or misleading . . . ."

86. Defendant violated Business & Professions Code § 17500 by publicly disseminating false and misleading advertisements regarding Defendant's Product, including on the Product packaging, that the snacks were "MADE WITH AVOCADO OIL" when in fact, the Products contained no authentic avocado oil and rather, were made with inferior, undisclosed seed oils.

87. Defendant's false and misleading advertisements were disseminated to increase the sales of its Product because consumers pay a premium for products made with avocado oil in lieu of refined seed oils that have a well-known negative health impact.

88. Defendant knew or should have known its representations and advertisements concerning its Product were false, deceptive, and misleading to reasonable consumers.

89. Plaintiff and the members of the California Class have suffered harm as a result of these violations of the FAL because they have paid money for Defendant's Products that they otherwise would not have paid had they known they were not actually made with authentic avocado oil, but instead, made with cheap seed oils.

90. Pursuant to Bus. & Prof. Code §§ 17203 and 17500, Plaintiff and members of the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its deceptive practices.

91. Further, Plaintiff requests an order awarding Plaintiff and other California

Class Members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

92. Additionally, Plaintiff and California Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

93. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

94. Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent actions. Specifically, Plaintiff purchased Defendant's Product for his own personal use. In doing so, Plaintiff relied on the false representation that the Product was "MADE WITH AVOCADO OIL" when in fact, it did not actually contain authentic avocado oil, but instead contained undisclosed seed oils. Plaintiff expended money in the transaction that he otherwise would not have had he known Defendant's advertising claims were false.

95. The Consumer Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

96. Plaintiff and each member of the proposed California Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a). Defendant's sale of its Products were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

97. Defendant violated the CLRA by engaging in the following proscribed practices by California Civil Code § 1770(a) in transactions with Plaintiff and California Class Members which were intended to result in, and did result in, the sale of its Products:

a. "Representing that goods…have . . . characteristics, ingredients, . . [or] benefits . . . that they do not have" (a)(5);

b. "Representing that goods are of a particular standard, quality or grade . . . if [they are] of another" (a)(7); and

c. "Advertising goods…with intent not to sell them as advertised" (a)(9).

98. Defendant's misrepresentations alleged herein were material to and relied upon by Plaintiff and reasonable consumers when deciding whether to purchase the Products over similar chips and snacks that were not advertised to contain avocado oil.

99. If Plaintiff and the California Class Members had known that the Products were not actually "MADE WITH AVOCADO OIL" only and instead were made with inferior and harmful seed oils, they would not have purchased the Products at all or would have paid substantially less for them.

100. As a direct and proximate result of Defendant's conduct, Plaintiff and the California Class Members suffered injury and damages in an amount to be determined at trial.

101. Pursuant to § 1782(a) of the CLRA, Plaintiff's Counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to comply, Plaintiff will seek all available remedies. For now, Plaintiff seeks only public injunctive relief with respect to this claim.

**<u>FOURTH CAUSE OF ACTION</u>**
**Breach of Express Warranty**
**California Commercial Code Section 2313, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

102. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

103. Defendant was a "seller" within the meaning of Cal. Comm. Code § 2103(d).

104. The Products were "goods" within the meaning of Cal. Comm. Code §

2105(1).

105. On the Product packaging, Defendant expressly warranted to all purchasers that the Products were "MADE WITH AVOCADO OIL" and listed "avocado oil" as the only oil ingredient in the Products.

106. Plaintiff and Class Members formed a contract with Defendant at the time they purchased the Product. As part of that contract, Defendant represented that the Products were "MADE WITH AVOCADO OIL" as described above. This representation constitutes an express warranty and became part of the basis of the bargain between Plaintiff and the Class Members.

107. Defendant made the above-described representations to induce Plaintiff and the Class Members to purchase the Products, and Plaintiff and the Class Members relied on the representations in purchasing the Products.

108. Defendant knowingly breached its warranty because the Products did not contain avocado oil as advertised, but instead, contained no authentic avocado oil and were made with cheap, undisclosed seed oils.

109. As a result, Plaintiff and members of the Class are entitled to damages in an amount to be determined at trial.

110. Within a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of himself and the other members of the Class, placed Defendant on notice thereof.

111. Therefore, Plaintiff prays for the relief as set forth below.

## FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

112. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

113. To the detriment of Plaintiff and the Nationwide Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

114. Plaintiff and the Nationwide Class conferred a benefit on Defendant in the form of payment for the Products.

115. Defendant unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

116. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

117. Plaintiff and the Nationwide Class, therefore, seek disgorgement of all wrongfully obtained money received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, seeks judgment in an amount to be determined at trial as follows:

a. Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel for the proposed Class;

b. Declaring Defendant's misconduct alleged herein to be unlawful;

c. Enjoining Defendant from the wrongful conduct as described herein on behalf of the general public;

d. For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

e. Awarding actual damages in an amount according to proof;

f. Awarding pre-judgment interest at the maximum rate permitted by law;

g. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other law basis; and

h. Awarding such other and further relief as this Court deems just, proper, and equitable.

///

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand a jury trial on all issues in this complaint that are so triable as a matter of right.

Dated: September 23, 2026

**KALIELGOLD PLLC**

By: */s/ Sophia G. Gold*
Jeffrey D. Kaliel
Sophia G. Gold

*Attorneys for Plaintiff and the Putative Class*